# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00381-CR

**Rudy Holguin Dominguez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT NO. A-09-1072-SB, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Rudy Holguin Dominguez guilty of the offense of burglary of a building with intent to commit theft. *See* Tex. Penal Code Ann. § 30.02 (West 2011). After Dominguez pleaded true to two enhancement paragraphs alleging previous felony convictions for burglary, the trial court assessed punishment at twenty years' imprisonment. *See id.* § 12.425(b) (West Supp. 2011) (making offense punishable as second-degree felony).[1] On appeal, Dominguez contends that (1) the evidence was insufficient to support the element of entry of a building or portion of a building not open to the public and (2) the evidence did not support the court's order that he pay his court-appointed attorney's fees. The State concedes error on the second issue. We will modify the judgment of conviction to delete the order to pay attorney's fees and affirm the judgment of conviction as modified.

---

[1] We cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

## BACKGROUND

Dominguez was indicted for one count of burglary of a building. At trial, the State presented evidence that Dominguez and two male companions entered Action Pawn Shop during business hours on August 25, 2009, and while his companions distracted the store's employees, Dominguez reached into a jewelry showcase without permission and stole a gold bracelet.[2]

The main disputed issue at trial was whether the jewelry counter area was open to the public. The store's assistant manager and manager both testified about the configuration of the jewelry counter area and whether the public was allowed access to the area. The assistant manager, Gilbert Ramirez, explained that the jewelry counter area was located near the front of the store. He identified a photograph of the jewelry counter area, which depicted four individual jewelry showcases arranged in the shape of a rectangle. The jewelry showcases had glass tops and fronts. A recording from Action Pawn Shop's video surveillance system, which was admitted into evidence, showed a man standing in front of one of the jewelry showcases, leaning over it, opening the back of the case and reaching into it, and then closing the case after pulling his arm out. The video also shows the man directing one of his companions to move to a different spot in front of one of the other counters to block any left-side view of his actions. Hector Barron, the store's manager, identified Dominguez as the man on the video recording who reached into the case. Barron recognized Dominguez because Dominguez had been in the pawn shop several times over the past couple of years.

The video depicts the jewelry counter area from a back corner angle, rather than from the front of the cases. It shows the space left between one of the side cases and the back case. The space is large enough to allow a person to enter into the rectangle-shaped area formed by the

---

[2] The facts recited herein are taken from the testimony and exhibits presented at trial.

2

backs of the jewelry showcases. Each of the other three corners of the rectangle has a large solid-topped column piece that is taller than the jewelry showcases. The video also shows a large potted tree placed in the center of the rectangle-shaped area formed by the backs of the jewelry showcases.

Ramirez testified that the jewelry counter area has never been open to the public, explaining "it's basically for us to get in there and open and close the doors to the jewelry case." The store's policy required the case doors to be kept locked except when an employee was showing a piece of jewelry to a customer. Ramirez testified that the store was very busy that day, and they were shorthanded, so he may have left a case unlocked when he was going back and forth to check prices at the computer, which was located at a different counter. Ramirez testified that a chain was available at the jewelry counter area's entrance to block access to the space behind the jewelry showcases, but no signs were posted to designate the area as being restricted to employees only. Ramirez stated that although children may have occasionally wandered back there, he was not aware of any incidents in which a customer walked behind the jewelry showcases to look at the jewelry during the four-year period that he had worked there.

Barron confirmed that the jewelry counter area was not considered open to the public. The jewelry showcases were key locked, and there was only one key that fit all the cases. Only employees were allowed to handle the jewelry, and they were only supposed to show one item from the cases at a time. Although there was no sign stating that the area was restricted to employees, Barron explained that customers knew not to come back there and never tried to do so, they were never given permission to remove jewelry from the cases themselves, and they were never allowed behind the jewelry showcases to look at the jewelry from that angle. Barron testified that in the eight

3

years that he had worked at the pawn shop, he had never seen a customer walk into the middle of the jewelry counter area behind the cases, although occasionally children would try to go back there. He stated that when that happened, the employees would ask the parents to keep their children out of there. He also testified that although there was a chain available to block the entrance into the jewelry counter area at the time of trial, it had not been there when the bracelet was stolen.

In addition to Ramirez's and Barron's testimony, the State also offered testimony from the police detective, Rick Keeling, who investigates crimes potentially involving local pawn shops. Detective Keeling testified about the work he had done to find the stolen bracelet using the nationwide pawn-shop computer database after Barron's report of the crime. Detective Keeling discovered that Dominguez had used the stolen bracelet as collateral to secure a pawn loan at another local pawn shop. Detective Keeling identified the bracelet from a photograph admitted into evidence and confirmed that it was the same bracelet that he seized as stolen property from the other pawn shop and returned to Barron at Action Pawn Shop. Detective Keeling also identified the transaction between Dominguez and the other pawn shop from the pawn-shop database printout, which was admitted into evidence.

Dominguez's counsel conceded during her closing argument that the State had proven that Dominguez intentionally or knowingly committed a theft, but she contended that the State had not proven that Dominguez intentionally or knowingly entered a portion of a building not open to the public. The jury found Dominguez guilty of one count of burglary of a building.

Dominguez withdrew his previous request to have the jury assess punishment and instead elected to have punishment assessed by the trial court. During the punishment phase,

4

Dominguez pleaded "true" to the indictment's two enhancement paragraphs. The State presented punishment evidence in the form of five judgments for conviction—two for possession of a controlled substance, two for burglary of a building, and one for burglary of a habitation.[3] The State also presented additional punishment evidence related to three other cases that had been considered for punishment purposes in connection with Dominguez's conviction for burglary of a habitation. *See id.* § 12.45 (West 2011).[4]

Dominguez testified during the punishment phase of trial and admitted taking the bracelet, but explained that he thought he was only committing a misdemeanor, not a felony. He also acknowledged his criminal history as documented by the State, including the fact that he was on parole for his 1995 conviction of burglary of a building when he stole the bracelet from Action Pawn Shop. After hearing this evidence, the trial court found the allegations in the enhancement paragraphs were true and orally sentenced Dominguez to twenty years' imprisonment. The original trial court judgment, which was rendered on May 19, 2010, and signed on May 24, 2010, stated that the sentence was eighteen years' imprisonment. This appeal followed on June 18, 2010. The trial court signed a nunc pro tunc judgment on July 29, 2010, correcting the sentence term to state it as twenty years' imprisonment.[5]

---

[3] The judgments entered into evidence included the convictions for the two offenses included in the enhancement paragraphs, which were a 1990 conviction for burglary of a habitation, a first-degree felony, and a 1988 conviction for burglary of a building, a second-degree felony.

[4] Section 12.45 allows a defendant to admit guilt of one or more unadjudicated offenses during the sentencing hearing and request that the court take each into account when determining the sentence for the offense or offenses for which the defendant has been adjudged guilty. Tex. Penal Code Ann. § 12.45(a) (West 2011). If the court takes the admitted offense into account, prosecution is barred for that offense. *Id.* § 12.45(c).

[5] The nunc pro tunc judgment was not included in the clerk's record, which was filed in this Court on July 12, 2010, before the nunc pro tunc judgment was signed by the trial court. The clerk's

5

**DISCUSSION**

Dominguez raises two issues on appeal. First, he argues that the evidence presented at trial was insufficient to support the element of entry of a building or portion of a building not open to the public. Second, he claims that there was no evidence to support the court's order that he pay his court-appointed attorney's fees, which the State concedes.

**Standard of review**

When evaluating the sufficiency of the evidence, we review all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). This standard requires us to defer to the jury's credibility and weight determinations. *See Jackson*, 443 U.S. at 319 (jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"); *Brooks*, 323 S.W.3d at 894. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution, and therefore, we must defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

**Sufficiency of the evidence: burglary**

In his first issue, Dominguez challenges the sufficiency of the evidence supporting the element of entry of a building or portion of a building not open to the public. Under the Texas

---

office forwarded the nunc pro tunc judgment by letter to the Court on August 2, 2010. The Court requested that the clerk's office supplement the record with the nunc pro tunc judgment, and the clerk's office filed the supplemental record on March 23, 2012.

Penal Code, a person commits the offense of burglary when that person (1) without the effective consent of the owner (2) enters a building *or any portion of a building* (3) not then open to the public (4) with intent to commit a felony or theft. Tex. Penal Code Ann. § 30.02(1). The issue presented here is whether the jewelry counter area constituted a portion of the pawn-shop building that was not open to the public when Dominguez took the bracelet.

Dominguez makes a two-pronged argument. First, he contends that there was not sufficient evidence for a rational factfinder to conclude that the jewelry counter area was a "portion of a building" within the statute's scope. Second, he argues that if the area was a portion of a building, then there was not sufficient evidence for a rational factfinder to conclude that it was not open to the public.

### *Portion of a building*

The penal code defines a "building" as "any enclosed structure intended for use or occupation . . . for some purpose of trade, manufacture, ornament, or use." *Id.* § 30.01(2) (West 2011). Dominguez contends that the jewelry counter area was not sufficiently enclosed to constitute a portion of a building. In effect, he argues that the State had to show that the jewelry counter area was a building within the main building. We disagree.

Dominguez relies on several cases to support this building-within-a-building argument. These cases are all distinguishable from the facts at issue here. Most of those cases concern whether the structure at issue was a "building," not whether it was a "portion of a building," as defined by the statute. For example, in *Day v. State*, the court concluded that a structure with three large doorways that could never be closed was not sufficiently enclosed by the chain-link fence surrounding it to

7

constitute a "building." 534 S.W.2d 681, 683 (Tex. Crim. App. 1976) (holding that "the structure itself must be of an enclosed character. A structure that is merely enclosed by something else would not for that reason alone be an enclosed structure [i.e., a building] under the statute."); *see also De Albuquerque v. State*, 712 S.W.2d 809, 811-13 (Tex. App.—Houston [1st Dist.] 1986, no pet.) (concluding that currency exchange booth in airport was "building" within statute's meaning); *Villarreal v. State*, 643 S.W.2d 790, 791-92 (Tex. App.—San Antonio 1982) (concluding that individual shops within larger structure were "buildings" within statute's meaning), *conviction aff'd as reformed on reh'g*, 645 S.W.2d 654 (Tex. App.—San Antonio 1983, no pet.). And in *Williams v. State*, the issue was not whether the area was a "portion of a building," it was whether that portion of the building was open to the public. 537 S.W.2d 936, 937-38 (Tex. Crim. App. 1976) (holding hospital chaplain's offices were portion of building not open to public when defendant had to open closed door to enter and hospital personnel testified that members of public were allowed to enter only when accompanied by chaplain).

In only one case relied upon by Dominguez did the court of criminal appeals analyze whether a particular area was a "portion of a building" within the scope of the burglary statute. *See St. Julian v. State*, 874 S.W.2d 669, 670-71 (Tex. Crim. App. 1994). In that case, the court found that the mailroom at an apartment complex was architecturally a portion of a larger structure, but that it did not fall within the burglary statute's scope. *Id.* at 670. The court concluded that the unenclosed mailroom was not a "portion of a building" intended to be protected by the statute because the public could freely enter the mailroom area through an open passageway and archway. *Id.* at 670-71. The court also explained that the open structure of the mailroom was not designed for

8

the security of the contents of the room containing the mailboxes. *Id.* at 671. In other words, although the mailboxes themselves were designed for security, the room containing them was not. *Id.* at 671 n.4. Thus, the critical elements identified by the court of criminal appeals as determinative of whether a particular area is a "portion of a building" within the statute's scope are whether it is (1) a delineated portion of a building and (2) whether it was designed to provide security for its contents by limiting public access.

Here, the evidence shows that the pawn shop was a building and the jewelry counter area was a delineated portion of that building. The configuration of the jewelry showcases, the corner posts, and the tree placed in the middle of the area show that the area was not intended to be an area for the public to walk through. *See id.* at 670-71. The small entrance was designed to allow only one person to enter at a time, and it was there to allow staff access to the back of the jewelry showcases, which were kept locked. In addition, the jewelry counter area in this case served a different purpose than the mailroom described in *St. Julian* did. Instead of being designed as a space to allow multiple people to access their mailboxes, each of which required its own key, the jewelry counter area was designed to prevent the public from walking through the area, while still providing access to the back of the jewelry showcases for employees who were the only ones who had a key to the showcases.[6] Thus, we conclude that the evidence shows that the jewelry counter area was designed

---

[6] An example of an area identified as a "portion of a building" within the statute's scope is the area at issue in *Johnson v. State*. *See* 664 S.W.2d 420, 423 (Tex. App.—Amarillo 1983, pet. ref'd, untimely filed) (concluding that evidence showed that supermarket was "building," and thus, that State was required to prove only that pharmacy department with three walls, front counter, and two lockable entry doors located in supermarket building was delineated portion of supermarket building that was closed to public when defendant entered).

9

for the security of its contents because it was designed to prevent the public from walking through the area.  Based on this evidence, a rational trier of fact could conclude beyond a reasonable doubt that the jewelry counter area was a "portion of a building" intended to be protected by the statute.

### *Open to the public*

Having determined that the jewelry counter area was a portion of a building within the statute's scope, we next consider whether the area was open to the public at the time Dominguez entered it.  Dominguez contends that no rational factfinder could have concluded that the area was not open to the public because there was no door, chain, or other impediment to public entry at the entrance to the jewelry counter area.  We disagree.  Nothing in the burglary statute and no precedent that we have found requires the presence of a physical barrier to establish that an area is not open to the public.  An open doorway alone is not enough to designate an area as one that is open to the public.  *Cf. Clark v. State*, 667 S.W.2d 906, 908 (Tex. App.—Dallas 1984, pet. ref'd) ("[A]n entry through an open door can constitute a burglary . . . if the building is not open to the public."); *see also Batiste v. State*, No. 01-93-00096, 1993 WL 460071, at *3 (Tex. App.—Houston [1st Dist.] Nov. 10, 1993, no pet.) (not designated for publication) (holding garage located on rear of residential lot behind home not open to public merely because garage door had been left open).

In this case, the area is analogous to a jewelry showcase that runs parallel in front of a building wall or a cash-register counter that runs parallel in front of a building wall.  In both of those situations, it is obvious to adults that the area behind the counter is intended for employees only and is not open to the public.  *Cf. Williams v. State*, 796 S.W.2d 793, 797 (Tex. App.—San Antonio 1990, no pet.) (holding rear storeroom of clothing store was not open to public despite exit

10

sign located above door); *Evans v. State*, 677 S.W.2d 814, 818 (Tex. App.—Fort Worth 1984, no pet.) (holding signs designating enclosed area as office within clothing store but not forbidding public entry were not determinative of whether portion of building was open to public because important evidence was whether restricted area was separated from public and whether defendant had permission to enter that portion of building not open to public). A review of the photograph and the video evidence shows that the jewelry counter area in Action Pawn Shop is the same type of area, except that it is located in the center of the store rather than along a building wall. The public was never given access to the interior of either the jewelry counter area or the interior of the jewelry showcases. The locked showcases were designed to be viewed from the front and the top only, not the back. Both Ramirez and Barron testified that they never saw a customer enter the area and that it was clear to adults that the area behind the jewelry showcases was restricted to employees. Moreover, Dominguez did not enter the area by walking into the entrance to access the unlocked case from the back side; instead, he reached over the counter from the front. It is reasonable to infer that he did so to draw less attention to himself than he would have if he had entered the area behind the cases—implicitly recognizing that it was an area where only employees were allowed. Based on the evidence in the record, a rational trier of fact could conclude beyond a reasonable doubt that the jewelry counter area was not open to the public. We overrule Dominguez's first issue on appeal.

**Sufficiency of the evidence: court-appointed attorney's fees**

In his second issue on appeal, Dominguez contends that the evidence does not support the court's order that he pay his court-appointed attorney's fees. The State concedes error.

A judge found Dominguez to be indigent based on his completion of a financial questionnaire in which Dominguez stated that he was unemployed, had no income, owned no property, and lived with his mother. Counsel was appointed to represent him until the "charges are dismissed, the Defendant is acquitted, completion of trial and any post-trial proceedings in the trial court . . . , or the attorney is relieved of his duties by the Court or replaced by other counsel." During Dominguez's punishment hearing, the State inquired about what kind of work Dominguez had done when he was out on parole before his arrest for stealing the bracelet. Dominguez answered: "I paint and, you know, yard work and plumbing and stuff." The trial court did not orally order him to pay attorney's fees in the case. He informed Dominguez that both an attorney and the reporter's record would be furnished to him on appeal if he could not afford to pay for them. The trial court's judgment of conviction ordered Dominguez to pay all costs of the proceeding as set forth in the bill of costs. The bill of costs shows attorney's fees of $500.

Article 26.04 of the Texas Code of Criminal Procedure governs the procedures for appointing counsel in a criminal case. Tex. Code Crim. Proc. Ann. art. 26.04 (West Supp. 2011). A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs. *Id.* art. 26.04(p). A trial court's authority to order a defendant to repay the cost of court-appointed counsel and other court costs depends upon the court's determining that the "defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided." *Id.* art. 26.05(g) (West Supp. 2011).

The defendant's present financial resources and ability to pay are explicit critical elements under article 26.05(g) that must be supported by record evidence. *Mayer v. State*,

309 S.W.3d 552, 556 (Tex. Crim. App. 2010). No trial objection is required to preserve the sufficiency of the evidence for appellate review. *Id.* When the evidence does not support the order to pay attorney's fees, the proper remedy is to delete the order. *Id.* at 557.

Appointed counsel represented Dominguez at trial after he was determined to be indigent, and Dominguez continues to be represented by court-appointed counsel on appeal. The trial court granted Dominguez's motion for a free reporter's record on appeal. The State acknowledges that there is no evidence that Dominguez's financial circumstances materially changed after the court's initial finding of indigency. Having carefully reviewed all of the record evidence in the light most favorable to the trial court's ruling, we agree with the parties that nothing in the record supports a finding that Dominguez's financial circumstances had materially changed. *See id.* (explaining standard of review that applies to trial court's decision to order defendant to pay attorney's fees). As noted above, Dominguez answered that before his arrest he had done some painting, "yard work and plumbing and stuff." But Dominguez's answer about work performed before his arrest is not evidence that his financial circumstances had changed between the time of the trial court's original indigency determination and the court's order to pay attorney's fees; instead, it indicates a mere possibility of changed *future* circumstances. *See Roberts v. State*, 327 S.W.3d 880, 883-84 (Tex. App.—Beaumont 2010, no pet.) (concluding that trial court's presumption that defendant might be able to find work in future did not tend to prove that she presently had financial resources enabling her to pay attorney's fees).

We sustain Dominguez's second issue. The trial court's judgment is modified to delete the order that Dominguez pay $500 in attorney's fees.

13

## CONCLUSION

Having overruled Dominguez's first issue and sustained his second issue, we affirm the judgment of conviction as modified.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Modified and, as Modified, Affirmed

Filed:   March 29, 2012

Publish